UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Broadcast Music, Inc.; House of Cash, Inc.; Elijah Blue Music, a division of Lighthouse, Inc.; Unichappel Music, Inc.; Fourteenth Hour Music, Inc.; Springtime Music, Inc.; Bocephus Music, Inc.; Rich Way Music, Inc.; Warner-Tamerlane Publishing Corp.; Buzzard Rock Music;** and **Songs of Universal, Inc.;**<br><br>Plaintiffs,<br><br>vs.<br><br>**Main Street Bar & Grill, Inc. d/b/a Main Street Bar and Grill** and **George D. Albers**, individually;<br><br>Defendants. | № 2:13-cv-00706-CWH<br><br>**Defendants' Memorandum in Support of their Motion for Summary Judgment** |

Defendants submit the following in support of their Motion for Summary Judgment:

### **Background**

This is a copyright infringement[1] action brought by owners of music copyrights and/or their designees against Defendant Main Street Bar & Grill, Inc. ("Main Street" - a South Carolina non-profit corporation) and Defendant George D. Albers (the former president of Defendant Main Street Bar & Grill, Inc.). (Entry 81-1[2], Ex. A pp. 8-9, 14). Defendant Main Street owns and operates a bar known as "Main Street Bar and Grill" located at 1761 North Main

---

[1] Defendants would note that Plaintiffs have not specifically pled vicarious liability as a cause of action in Plaintiffs' Complaint. The Supreme Court has identified vicarious infringement and contributory infringement as separate theories of recovery. See MGM Studios, Inc. v. Grokster, Ltd., 543 U.S. 913, 930, 125 S.Ct. 2764, 2776 (2005) accord NXVIM Corp. v. Sutton, No. 06-cv-1051 at p. 29 (D.N.J. Order dated June 27, 2007).

[2] These documents are authenticated on pages 5 & 6 of Exhibit A (George Albers deposition).

Street, Summerville, South Carolina. Main Street Bar and Grill is a private club, with entry limited to members and their guests. (Ex. A pp. 8-9; Entry 61-2, p. 3; Ex. B pp. 9, 25). According to the bylaws of Defendant Main Street, the objective of Main Street Bar and Grill is to "operate a non profit social club consisting of a lounge and restaurant for the social entertainment of its members[,] guest[s] of members[,] and to sponsor certain charitable organizations." (Entry 81-1 p. 4 Art. I). Some of the charitable causes it has supported include "My Sister's House", various charity motorcycle runs, and benefits for injured law enforcement officers. (Ex. A pp. 24-25; Ex. B p. 13).

This action arises out of the alleged performance of several songs on January 18, 2013, by a band named Stoneking at Main Street Bar and Grill. On this night, Patrick Dowd, an employee of the Plaintiffs, allegedly entered the private club and recorded roughly two and a half hours of music played by Stoneking, and music played on the restaurant's jukebox. (Entry 38-1). Plaintiffs allege that after reviewing this recording they discovered unlicensed performances of Plaintiffs' copyrighted works, specified in their Complaint. (Entry 1-1).

## Argument

For reasons that still remain unclear, the Plaintiffs seek $15,000 in damages and an indeterminate amount of attorneys' fees from a barely solvent non-profit corporation and a figurehead president who recieves no salary. The damages requested are grossly out-of-proportion to Plaintiffs' actual losses (if any) and the only "compensation" they will find at the conclusion of this litigation will be to see a local business permanently shuttered.[3]

---

[3] Defendant Albers testified that the damages sought by the Plaintiffs will financially cripple him and close Main Street Bar and Grill, and Secretary/Treasurer James Harpole has testified that once closed, the Main Street Bar and Grill will not be able to re-open due to its proximity to a church. (Entry 61-2, p. 3; Ex. B p. 5).

Luckily for the Defendants, the Plaintiffs' claims are not supported by the law. Neither Defendant meets the criteria for the application of vicarious liability: Defendant Albers is a figurehead president with no financial interest in infringement, and Defendant Main Street cannot have a financial interest in infringement. Additionally, the trespass and unauthorized recording committed by Plaintiffs' employee Patrick Dowd prohibits Plaintiffs from bringing this action and subjects the Plaintiffs to liability for Dowd's misconduct.

**I.  Defendant George Albers'** *de minimus* **involvement in the corporation does not subject him to vicarious liability.**

Defendant Albers was a "figurehead" president of Defendant Main Street, with no real authority and menial duties. The Fourth Circuit and other courts have recognized that such a titular officer is not subject to vicarious liability, and Defendant Albers should likewise not be held liable in this action.[4] "The Copyright Act does not expressly render anyone liable for infringement committed by another." Sony Corp. of America v. Universal City Studios, Inc., 464 U. S. 417, 434 (1984). Nonetheless, Federal Courts recognize that under certain circumstances the owner of a bar or nightclub may be found to be liable for the infringement of another. "In cases involving live performances by musicians or disc jockeys…the only bases for liability of the nightclub owner are vicarious and contributory liability, because the owner is not performing the work. Only the actual performer – the musician or the disc jockey – is a direct infringer." Polygram Intern. Pub. Inc. v. Nevada/TIG, Inc., 855 F.Supp. 1314, 1322 (D. Mass 1994). "In

---

[4] Plaintiffs may attempt to assert a contributory infringement theory in this case. Such a theory of liability was not pled by the Plaintiffs, and it is nonetheless it is not appropriate under the facts of this case. "[M]erely providing means [for infringement] is not always sufficient to prove [contributory] infringement." Costar Group Inc. v. Loopnet, Inc., 164 F. Supp. 2d 688, 706 (D.Md. 2001). This is especially true when the means have substantial non-infringing use. See Sony Corp. v. Universal City Studios, Inc., 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984) (the mere provision of means, capable of substantial non-infringing uses, was not a basis for contributory infringement). Holding liable the mere purveyor of a passive venue capable of substantial non-infringing use (a bar and restaurant) is inappropriate here.

order to establish vicarious liability, a copyright owner must demonstrate that the entity to be held so liable: (1) possessed the right and ability to supervise the infringing activity; and (2) possessed an obvious and direct financial interest in the exploited copyrighted materials." Nelson-Salabes, Inc. v. Morningside Development, LLC, 284 F.3d 505, 513 (4th Cir. 2002). Vicarious liability under the Copyright Act is based on the common law doctrine of *respondeat superior*, and the ultimate policy behind imposing such secondary liability "is the imposition of liability upon the beneficiary of…exploitation." Shapiro, Bernstein & Co. v. H. L. Green Co., 316 F.2d 304, 307 (2nd Cir. 1963). "[Vicarious liability] 'prevents an entity that profits from infringement from hiding behind undercapitalized 'dummy' operations when the copyright owner eventually sues.'" Nelson-Salabes at 513 (quoting Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc., 955 F.2d 1143, 1150 (7th Cir.1992)).

Vicarious liability is not necessarily strict liability, and the Fourth Circuit recognizes that vicarious liability under the Copyright Act has limits. In Brunswick Beacon, Inc. v. Schock-Hopchas Pub. Co., 810 F.2d 410 (4th Cir.1987), *The Brunswick Free Press*, copied and ran ads that previously appeared in *The Brunswick Beacon*. The *Beacon* filed suit against the company that published the *Free Press* and also the publisher[5] of the newspaper. The District Court refused to hold the publisher vicariously liable for acts of the company (direct infringer), and the Fourth Circuit affirmed:

> The district court absolved the publisher of the Free Press from any personal liability. She had the largest financial investment in the Free Press and the

---

[5] A publisher of a newspaper is chief executive of company, and is the equivalent of a president of a corporation. E.g. Bureau of Labor Statistics, Career Guide to Industries, 2010–11 Edition: Publishing, Except Software (U.S. Department of Labor 2009) *available at* https://web.archive.org/web/20100330055218/http://www.bls.gov/oco/cg/cgs013.htm (last visited July 15, 2015) ("Publishers are in charge of the business side of the organization and are responsible for implementing company policies.").

>nominal title of publisher, but she had no real authority and her few duties were menial.

Id. at 414. Brunswick Beacon stands for the proposition that an executive with nominal authority may not be held liable for the copyright infringement of the corporation. This is entirely consistent with the stated policy of vicarious liability under the Copyright Act, which is "the imposition of liability upon the beneficiary of…exploitation." Shapiro, *supra.*

More recent opinions outside of this circuit also support this proposition. In Broadcast Music, Inc. v. Tex Border Mgmt., Inc., 11 F.Supp.3d 689 (N.D.Tex. 2014), the Northern District of Texas was presented with a similar factual situation (and a plaintiff identical to a Plaintiff in this case). In Tex Border Mgmt., the Northern District of Texas held that an individual's role as president, incorporator, and registered agent of the corporate owner of an infringing nightclub "does not automatically establish that he had the requisite right and ability to control the infringing activities without more [proof]." Id. at 694. The president of the corporation in Tex Border Mgmt. testified "he did not manage [the nightclub's] day-to-day activities, and that he had not hired the DJ and the band who played the infringing musical acts in question." Id. Ultimately, the Tex Border Mgmt. court held that the president of the corporation could not be held vicariously liable and dismissed the copyright infringement claims against him. Id. at 696.

The role of Defendant George Albers is analogous to that of the publisher in Brunswick Beacon and the president in Tex Border Mgmt. The responsibilities of a president of a non-profit corporation are not defined by South Carolina law, which allows the corporate bylaws control. S.C. Code § 33-31-841. No duties or powers are enumerated in the bylaws for the president of

Defendant Main Street.[6] (Entry 81-1 pp. 4-5). The only reasonable inference from the evidence is that he had virtually no real responsibilities, duties, or authority:

(a) James Harpole, the Secretary/Treasurer of Defendant Main Street, testified the president of Main Street Bar & Grill, Inc. is a "figurehead". (Ex. B p. 18).

(b) Albers was "president" of the corporation from 2009 to 2015, but he never hired or fired an employee. (Ex. A. 8-9, 22).

(c) Albers was not involved in the day-to-day management of the establishment. (Ex. A. p. 11; Entry 36-2 ¶ 7; Entry 61-2 p 2). Albers did periodically attend managers' meetings (though his attendance dropped off in 2013 due to his wife's cancer treatments), but these meetings were overseen by the Secretary/Treasurer, who also oversaw the operation of the establishment. (Ex. A pp. 12-16; Ex. B p. 11; Entry 61-2 p 2).).

(d) Albers was never paid for serving as president. (Ex. A pp. 25-26; Ex. B p. 23; Entry 61-2 p 2).

(e) Albers had no role in selecting bands, and did not select the band that allegedly played on January 18, 2013. (Entry 36-2 ¶ 7; Entry 61-2 p 2).

As a titular executive along the lines of Brunswick Beacon and Tex Border Mgmt., Defendant Albers does not have the requisite right and ability to supervise to allow him to be held vicariously liable. This is consistent with the law of the Fourth Circuit and the general policy of vicarious liability. The causes of action against him must be dismissed.

---

[6] The only duties and powers enumerated in the bylaws are for the "membership" and the "board of directors" who are charged with operation of the corporation. (Entry 81-1 pp. 5). While there currently is no board of directors, meetings of the membership are the functional equivalent. (Ex B p. 10).

**II.    The Defendants did not have a financial interest in the alleged infringing activity, and thus are not liable under a theory of vicarious infringement.**

A plaintiff must also prove a vicarious infringer "possessed an obvious and direct financial interest in the exploited copyrighted materials." Nelson-Salabes, *supra*. The only reasonable inference from the evidence is that both Defendants lack a financial interest in the alleged infringement, and thus both must be dismissed.

Defendant Main Street Bar & Grill, Inc. is a non-profit corporation that consistently runs at a loss or near-loss, and it ran a loss the night of the alleged infringement. (Ex. A pp. 24-25; Ex. B pp. 14; Entry 61-2 pp. 1-2; Entry 81-1). South Carolina law flatly prohibits a non-profit corporation from making distributions to its members, though it is allowed to purchase back memberships if such a purchase would not leave it insolvent. S.C. Code §§ 33-31-1301 & 1302. A membership at Main Street Bar and Grill costs $2.00. (Ex. B p. 9). The potential buy-back of $2.00 memberships is *de minimus* and does not rise to the level of any serious and actionable "financial interest", especially if it subjects Defendant Main Street to $15,000+ in damages and legal fees. Further, should Defendant Main Street become flush with cash and opt to dissolve, the bylaws specifically provide that any residual assets will not be distributed to members, but instead to one or more non-profit corporations selected by the members. (Entry 81-1 p. 5 Art. IX). Put simply, no one profits from the operations of Defendant Main Street.

Defendant George Albers was never paid for serving as president. (Ex. A pp. 25-26; Ex. B p. 23; Entry 61-2 p 2). While Albers has loaned money to the corporation (Ex. B p. 14), this is irrelevant to vicarious liability analysis; the Brunswick Beacon court found that even the "largest financial investment" in the company was not determinative. Brunswick Beacon 810 F.2d at 414. This loan is analogous to the "management contract" that the officer had with the corporation in Tex Border Mgmt.; that court held that the mere existence of that contract, combined with an

officer position, did not establish a direct financial benefit necessary for vicarious liability. Tex Border Mgmt., 11 F.Supp.3d at 695. Finally, this loan was made interest-free. Due to the cruel workings of inflation and the time value of money, even a full dollar value reimbursement to Albers in the future will be worth *less* than the money he originally lent. Defendant Albers loses money even in his best-case scenario.

The stated policy of vicarious liability under the Copyright Act is "the imposition of liability upon the beneficiary of…exploitation." Shapiro, *supra.* This is clear in the requirement for a "financial interest" in any infringement. However, if exploitation occurred on January 18, 2015, there appears to be no beneficiary whatsoever. The only reasonable inference from the evidence is that there was no "financial interest" for either Defendant that night, and thus the Plaintiffs' claims must be dismissed.

### III.    There is no genuine issue of material fact the Plaintiffs' employee/agent Patrick Dowd trespassed at Main Street Bar and Grill.

The Defendants have also alleged that the trespass of Patrick Dowd constitutes an affirmative defense to Plaintiffs' infringement action. Defendant Main Street Bar & Grill, Inc. has also alleged a counterclaim[7] for civil trespass against the Plaintiffs. There is no genuine issue of material fact that Mr. Dowd, an employee of the Plaintiffs, committed a civil trespass on the premises. The Defendants must prevail on their defenses and counterclaims.

One in peaceable possession may maintain an action for trespass against another who interferes with his quiet and exclusive enjoyment of the property. Lane v. Mims, 221 S.C. 236, 70 S.E.2d 244 (1952). Merely breaking the close of the property in question is a sufficient enough violation of rights for a cause of action for trespass to lie. Snow v. City of Columbia, 305

---

[7] While Defendants are aware that the Court has not yet granted their Motion to Amend (Entry 79), such leave is freely granted and the facts and law cited in this memorandum provide ample proof of this counterclaim's merit.

S.C. 544, 409 S.E.2d 797, 802 (S.C.Ct.App.1991). It is also possible that a person enters a property with the permission of the possessor and later becomes a trespasser by exceeding that permission. E.g. Shramek v. Walker, 152 S.C. 89, 149 S.E. 331 (1929).

Unlike in *criminal* trespass (e.g. S.C. Code § 16-11-620) one can become liable for *civil* trespass without notice from the possessor; the unauthorized act converts his status from licensee to trespasser without notice. Further, the person does not become a trespasser from that point forward, he becomes a trespasser *ab initio*, *i.e.* he is considered a trespasser from the beginning of his entry. The United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697 (1964) addressed this aspect of the law of civil and criminal trespass in the context of a "sit-in" in Columbia, South Carolina:

> The clear distinction between civil and criminal trespass is well recognized in the common law. Thus it is stated, in 1 Bishop, Criminal Law, § 208 (9th ed. 1923) that
>
>> "In civil jurisprudence, when a man does a thing by permission and not by license, and, after proceeding lawfully part way, abuses the liberty the law had given him, he shall be deemed a trespasser from the beginning by reason of this subsequent abuse…"

378 U.S. at 358, 84 S.Ct. at 1705; see also The Six Carpenters' Case, 8 Co. Rep. 146a, 77 Eng. Rep. 695 (K.B. 1610) (When an entry, authority, or license is given to anyone by the law, and he abuses it, he shall be a trespasser *ab initio*.) (attached as Ex. C).

There is no genuine issue of material fact that all of the elements of a civil trespass are proven in the record of this case. Defendant Main Street was in peaceable possession of the as its proprietor. The Plaintiffs allege that Patrick Dowd, their employee, entered the bar on January 18, 2015, and recorded music. (Entry 38-1). Dowd becomes a trespasser after his entry in one of three independent factual scenarios:

(1)     Dowd was not authorized to enter the premises.

According to Main Street's corporate bylaws: "[b]ona fide guests shall be limited to those who accompany a member onto the premises [or] for whom [a] member has made prior arrangements with the management of the corporation[.]" (Entry 81-1 p. 4 Art. III Sec. 6). Plaintiff cannot produce any admissible evidence that proves Dowd was a member, was accompanied by a member, or was otherwise authorized to enter this private club. See Fed. R. Civ. P. 56(c)(2). (Entry 61-2, p. 3). Therefore, Dowd was a trespasser the moment he entered.

(2)     Dowd engaged in unauthorized recording in the bar.

Recording of musical acts is not allowed inside the bar. (Entry 61-2, p. 3). This is axiomatic, as it is the common custom and usage, known by virtually any bar patron, that recording of live musical acts is the exception, not the rule. See e.g. Rawls v. Conde Nast Publications, Inc., 446 F.2d 313, 317 (5th Cir. 1971) ("'Frequently, perhaps more often than otherwise, the consent [to remain in premises] will be implied rather than expressed. Consent may be implied from custom, local or general, from usage or from the conduct of the parties, or some relationship between them.'") (quoting Harper & James, The Law of Torts, § 1.11, at 38 (1956)). Plaintiffs cannot produce any admissible evidence that proves Mr. Dowd was authorized by Main Street Bar and Grill to record music. See Fed. R. Civ. P. 56(c)(2). The moment that Dowd began recording, whatever license he may have had to be on-premises expired, and he became a trespasser *ab initio*.

(3)     Dowd engaged in illegal/criminal acts in the bar.

Illegal or criminal acts are not allowed inside the bar. (Entry 61-2, p. 3). This is axiomatic, as it is the common custom and usage, known by virtually any bar patron, that one's tenure at a bar will end if he commits a crime. See e.g. Rawls, *supra*. Owners of copyrighted

works have the exclusive right to reproduce their work in copies. 17 U.S.C. § 106(1). This right is limited to the right to duplicate the sound recording in the form of "phonorecords or copies that directly or indirectly recapture the actual sounds fixed in the recording." 17 U.S.C. § 114(b). Mr. Dowd claims he recorded multiple songs that were played from Main Street's jukebox, *e.g.* "Hells Bells", "Dude", "Hit Me with your Best Shot", and "Iron Man". (Entry 38-1 pp. 3, 9). Dowd's recording created a copy of these works made from an indirect recapture of the "actual sounds fixed in the recording". This was a violation of these artists' rights under Section 106(1) of the Copyright Act, and was thus an illegal act. To the extent Mr. Dowd's recording was performed "for purposes of commercial advantage or private financial gain", it also constituted criminal copyright infringement under 17 U.S.C. § 506(a)(1)(A). The moment that Dowd began recording he committed illegal/criminal acts, and whatever license he may have had to be on-premises expired, and he became a trespasser *ab initio*.

There is no genuine issue of material fact as to Mr. Dowd's trespass. This has two effects on this case. The first is that Defendant Main Street Bar & Grill, Inc.'s counterclaim for trespass prevails as a matter of law as to liability. A damages hearing, before a jury, will need to be scheduled at a later time.

Next, both Defendants have asserted the defense of unclean hands, an equitable principle that this district has used before to bar copyright infringement actions to litigants who misuse their rights. See Buchanan Home & Auto Supply Co. v. Firestone Tire & Rubber Co., 544 F. Supp. 242 (D.S.C. 1981) (citing Tempo Music, Inc. v. Myers, 407 F.2d 503 (4th Cir. 1969)). The Plaintiffs have asserted their alleged rights under the Copyright Act by trespassing and committing illegal acts at Main Street Bar and Grill. The fruit of this poisonous tree forms the basis of Plaintiffs' suit against the Defendants; as a matter of equity they must not be allowed to

proceed.

## Conclusion

The Plaintiffs' causes of action all fail as a matter of law. Further, the record is clear that the Plaintiffs' employee has committed a trespass. Defendants would ask this Court to (1) dismiss Plaintiffs' claims with prejudice, (2) grant Defendant Main Street Bar & Grill, Inc. summary judgment as to liability in its trespass counterclaim, and (3) grant Defendants any other and further relief this Court deems just and proper.

Dated: 16 July 2015

/s/ Jason Scott Luck
Christine Companion Varnado (#6008)
cvarnado@seibelsfirm.com
Jason Scott Luck (#9696)
jluck@seibelsfirm.com
SEIBELS LAW FIRM, P.A.
38 Broad Street, Suite 200
Charleston, SC 29401
843.722.6777 (phone)
843.722.6781 (telefax)
**Attorneys for Defendants**