# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC.; HOUSE OF CASH, INC.; ELIJAH BLUE MUSIC, A DIVISION OF LIGHTHOUSE, INC.; UNICHAPPEL MUSIC, INC.; FOURTEENTH HOUR MUSIC INC.; SPRINGTIME MUSIC, INC.; BOCEPHUS MUSIC, INC.; RICH WAY MUSIC, INC.; WARNER-TAMERLANE PUBLISHING CORP.; BUZZARD ROCK MUSIC; SONGS OF UNIVERSAL, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO.: 2:13-cv-706-CWH |
| v. | ) ) | |
| MAIN STREET BAR & GRILL, INC. d/b/a MAIN STREET BAR AND GRILL and GEORGE D. ALBERS, individually, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I. PRELIMINARY STATEMENT

This is an action for copyright infringement brought pursuant to 17 U.S.C. Section 101 et. seq. (the "Copyright Act"). Jurisdiction is vested in this Court under 28 U.S.C. Section 1338(a), and venue is proper under 28 U.S.C. Section 1400(a). Based upon the pleadings, depositions and responses to written discovery, and the declarations submitted herewith, Plaintiffs are entitled to summary judgment in their favors.

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiff Broadcast Music, Inc. ("BMI") is a "performing rights society" which licenses the right to publicly perform copyrighted musical works on behalf of the copyright owners of these works. 17 U.S.C. § 101. The other Plaintiffs are the copyright owners of various compositions which are the subject of this lawsuit. Exh. A (Declaration of Renée S. Wolfe, ("Wolfe Declaration"), ¶ 3, 4). Under the Copyright Act, the owners of copyrights in musical compositions possess the exclusive right to authorize public performances of their works. 17 U.S.C. § 106(4).

Through agreements with copyright owners such as music publishing companies and independent composers, BMI acquires non-exclusive public performance rights. Exh. A (Wolfe Declaration, ¶ 2). BMI has acquired such rights from each of the other Plaintiffs in this action. Id. at ¶ 5.

BMI, in turn, grants to music users such as broadcasters and the owners and operators of concert halls, restaurants, nightclubs and hotels, the right to publicly perform any of the works in BMI's repertoire by means of "blanket license agreements". Id. at ¶ 2. These agreements have been recognized as the most practical means to exploit copyright owners' public performance rights. See Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1 (1979); Broadcast

Music, Inc. v. Moor-Law, Inc., 484 F. Supp. 357 (D. Del. 1980), 527 F. Supp. 758 (D. Del. 1981), aff'd without published opinion, 691 F. 2d 491 (3d Cir. 1982).

BMI operates as a non profit-making performing rights organization.  It distributes all of the money it collects in license fees from music users - - licensees such as the restaurants, hotels and nightclubs referenced above - - as royalties to its affiliated publishers and composers, after the deduction of operating expenses and reasonable reserves.  Id. at ¶ 3.

At all times relevant to the claims in this case, the Defendants, Main Street Bar & Grill, Inc. owned and operated Main Street Bar and Grill located at 1761 N Main St., Summerville, South Carolina 29483-7836 (the "Establishment" or "Main Street Bar and Grill").  At all relevant times. George D. Albers was the president of Main Street Bar & Grill, Inc.  Main Street Bar and Grill regularly features performances of live and recorded music.  Exh. B  (Responses to Plaintiffs' First Request for Admissions ("Admissions")); Exh. C (Deposition of George Albers on June 17, 2015 ("Albers Dep.") at 28:21 – 29:6));  Exh. D (Deposition of James Harpole, corporate representative of  Main Street Bar & Grill, Inc., on June 17, 2015 ("Harpole Dep.") at 38:3-10).

As more fully set forth in the Declaration of Brian Mullaney, Vice President, Sales, Licensing, BMI (the "Mullaney Declaration") which accompanies this motion as Exh. E, between May 2010 and February 2013, BMI repeatedly informed the Defendants that they needed to obtain permission for public performances of copyrighted music. Exh. E  (Mullaney Declaration ¶¶ 3, 5, 8.)  BMI offered to enter into a license agreement with the Defendants, but the Defendants did not do so. Id. at ¶ 9.

On July 23, 2012, BMI instructed the Defendants to cease public performances of music licensed by BMI.  Id. at ¶ 6.  Nevertheless, public performances of BMI-licensed music continued at

Main Street after that date, and performances of songs owned by the Plaintiffs were chronicled by a BMI researcher on January 18, 2013. Id. at ¶ 18 (and Exh. A to Mullany Decl.). Specifically, Patrick Dowd, a BMI employee and a paying customer of Main Street Bar and Grill, generated an audio recording and a written report of the songs played at Main Street Bar and Grill on that night. The written report, audio recording and a review of the audio recording identify the performances by a live band called Stoneking of the songs that are the subject of this infringement action. Id.

The Plaintiffs commenced this action for copyright infringement on March 15, 2013. The Defendants initially responded by way of a letter stating that they did not believe that they should be responsible for the payment of royalties for the performance of live music. Then, the Court ordered Defendants to answer properly. Defendants ignored that order, and were put in default. The Court granted Defendants' Motion to Set Aside Enty of Default, and Defendants' Answer was filed on August 11, 2014.

Plaintiffs' First Set of Interrogatories, First Request for Production, and First Requests for Admissions were served on November 6, 2014. The Defendants responded to Plaintiffs' Request for Admissions within the time provided by Fed. R. Civ. P. 36. Following the granting of Plaintiff's motion to compel, Defendants subsequently responded to Plaintiffs' First Interrogatories and First Request for Production of Documents. A copy of the requests and responses, as supplemented, are attached as Exh. F. accompanying this Memorandum. Plaintiffs took the deposition of Defendant George Albers and of the corporate 30(b)(6) witness, Mr. James Harpole, on June 17, 2015.

Plaintiffs bring this Motion for Summary Judgment under Fed. R. Civ. P. 56. As demonstrated below, there are no material issues of fact remaining in this action. All material facts

have been admitted by Defendants either through written discovery or the depositions of Mr. Albers and Mr. Harpole.  Accordingly, Plaintiffs are entitled to Judgment as a matter of law.

### A.  Liability of Main Street Bar & Grill, Inc.

There is absolutely no dispute that on January 18, 2013 Defendant Main Street Bar & Grill, Inc. operated and maintained the Establishment and had the right and ability to direct and control the activities of the Establishment.  Nor is there any dispute that copyrighted musical compositions were publicly performed at Main Street Bar and Grill.  See Exh. B (Admissions 1, 2, 8).  There is no dispute that Main Street Bar & Grill, Inc. sponsored the performance.  In order for the Plaintiffs to protect their copyrighted works, Patrick Dowd, a paying customer of the Establishment and a BMI employee, made an audio recording and written report of the songs that were performed at Main Street Bar & Grill on January 18, 2013.

There is no controverted evidence that Folsom Prison, Mustang Sally, Midnight Rider, Whiskey Bent and Hellbound, Good Ole' Boys, and Soulshine are licensed by BMI as part of its vast repertoire and were publicly performed by a band hired by the Defendants on January 18, 2013 at Main Street Bar & Grill.  See Exh. B (Admissions 8); see also Exh. E (Mullaney Declaration at ¶10, 11); Exh. A (Wolfe Declaration at ¶ 4).  Plaintiffs have presented uncontested proof that the songs were performed at Main Street Bar and Grill that night.  Defendants only response is that they themselves cannot make a determination whether the songs were performed.  See Exh. B (Admissions 9(a)-(f)).

### B.  Liability of George Albers

In 2009, Defendant George Albers and his friend James Harpole purchased the

establishment that is now know as Main Street Bar & Grill from the prior owner.[1] They set up a company called Southhern Comfort, Inc. which owned the Southern Comfort Bar and Grill. In 2011, the name of the corporation was changed to Main Street Bar & Grill, Inc., and the name of the establishment was changed to Main Street Bar & Grill.

Mr. Albers assumed the Presidency of the company, while Mr. Harpole acted as the Secretary and Treasurer. Their objective was to keep their favorite watering hole in business and to make money. Exh. C (Albers Dep. at 14:7-11) At some point both Mr. Albers and Mr. Harpole loaned the business money. There is currently a note payable to Mr. Albers from the business for approximately $13,000. Exh. D (Harpole Dep. at 14:4-7). Mr. Harpole testified, *inter alia,* that he "swear[s], one day we'll get our money back." Id. at 14:18-19.

Mr. Albers ventured into the business because it "[s]ounded like a good thing to do. To be honest, I thought we'd make a little money." Exh. C (Albers Dep. 14:7-11). "So that was the goal. Eventually probably turn it into a regular bar where you could make profit, try to build the membership up." Id. at 28:1-6. Albers and Harpole used music to draw customers into bar; they had live bands and karaoke. Id. at 28:21 – 29:8). Mr. Harpole confirmed that the purpose of having music performed was to increase sales. Exh. D (Harpole Dep. 36:9-12).

Mr. Albers took an active role in the business. Albers tried to be there at least once a week. Exh. C (Albers Dep. 15:9-14). He took part in weekly or monthly managers meetings. Id. at 11:9 – 13:13. He applied for and obtained the liquor license for the business. Mr. Albers stated in an Affidavit in 2014 that he relied on managers to make sure that music was properly licensed, Id. at

---

[1] Mr. Albers was the President of Main Street Bar & Grill, Inc. from 2009 through April or May 2015. Exh. D (Albers Dep. at 8:23-9:7 ). Although he recently stepped down from the position, he was the President of the corporation at all times relevant to the infringements alleged in the case.

11:9-20, and complied with applicable law, even copyright law.  He told the managers who hired bands that the performers had to be legal.  Id. at 21:1-5.  But when his managers brought up BMI in discussions, he decided it was a "scam" and "let it roll over the shoulder." Id. at 16:19 – 17:4.  In fact, anytime that his managers tried to talk to him about BMI, he would tell them it was a scam. Id. at 23:4-7.  He made a conscious decision not to give any attention to BMI  - not even inquiring of other bar owners whether they had obtained licenses - until he was served with this lawsuit. Id.  at 18:6-13.

On January 18, 2013, Mr. Albers was the President of Main Street Bar & Grill, Inc. and was acting in accordance with his regular role at the Establishment.  On that night, Patrick Dowd visited Main Street Bar & Grill and made an audio and written recording of the songs that were performed there.  Exh. E (Mullaney Declaration at ¶ 10) .  A band called Stoneking performed live over the course of roughly two and a half hours.  Exh. E   (Exh. A to Mullaney Declaration). Some of the many songs they played were those that are the subject of this lawsuit - - Folsom Prison, Mustang Sally, Midnight Rider, Whiskey Bent and Hellbound, Good Ole' Boys, and Soulshine.

### III. PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT

Plaintiffs are entitled to summary judgment against Defendants as a matter of law. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986).  Moreover, "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials ... but the adverse party's response ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Copyright Act provides the owner of a copyright with the exclusive right to perform, or to authorize others to perform, the copyrighted work.  17 U.S.C. Section 106(4).  Any person who violates this exclusive right is an infringer.  Id. at Section 501(a).  It is undisputed that the Defendants caused the public performance of the Plaintiffs' copyrighted musical compositions without authorization in violation of the Copyright Act.  Accordingly, Plaintiffs seek judgment as a matter of law, statutory damages, injunctive relief and attorney's fees and costs.  See 17 U.S.C. § 504 (c), 502 and 505.

### A.    There Are no Genuine Issues of Material Fact

There are no genuine issues of material facts and summary judgment should be granted to Plaintiffs against Defendants.

In order to prevail in an action for copyright infringement, the Plaintiffs must establish the following five elements:

1. Originality and authorship of the copyrighted works involved;
2. Compliance with the formalities of the Copyright Act;
3. Proprietary rights in the copyrighted works involved;
4. Public performance of the compositions involved; and
5. Lack of authorization for public performance.

Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc., 657 F. Supp. 1016 (S.D. Miss.

1987); Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629 (D.N.H. 1986); Milene Music v. Gotauco, 551 F. Supp. 1288 (D.R.I. 1982); Boz Scaggs Music v. KND Corp., 491 F. Supp. 90 (D. Conn. 1980).

The first three elements are established in the Wolfe Declaration which constitutes sufficient evidence of the facts sworn to therein. 28 U.S.C. § 1746. The Wolfe Declaration, referring to the Schedule of the Complaint, sets forth the names of the authors and publishers of each composition, the date of copyright registration and the registration number. Exh. A (Wolfe Declaration, ¶ 4). The Declaration is supplemented with copies of each registration certificate and subsequent documentation relating to the chain of ownership of the songs. There is no dispute of these facts. By their response to the Plaintiffs' First Request for Admissions, numbers 11, 13, 15, the Defendants do not dispute the elements of originality, proper registration and proprietary interest. Exh. B (Admissions). See, Broadcast Music, Inc. v. Pine Belt Investment Developers, Inc., 657 F. Supp. at 1020; Milene Music, Inc. v. Gotauco, 551 F. Supp. 1288. They also do not dispute that they have no evidence to rebut the Plaintiffs' proof on these three points by their response to the Plaintiffs' First Request for Admissions, numbers 12,. 14, 16. Id.

The fourth element, public performance, is established by the Certified Infringement Report of Patrick Dowd, who was hired by BMI for the purpose of visiting the Establishment and making written reports of musical compositions which were performed, and the review of the audio recording of the visit made by Christopher Barrington. Exh. E (Mullaney Declaration, ¶¶ 10, 11). Mr. Dowd's Certified Report and Mr. Barrington's Declaration are attached to the Mullaney Declaration at Exh A thereto, and, as discussed in more detail below, it is clear that performance of the music may also be established by Certification or Declaration. 28 U.S.C. § 1746; Broadcast

Music, Inc. v. Pine Belt Investment Developers, Inc., 667 F. Supp. at 1020; Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629.  The public performance of the works is not disputed by the Defendants. See Exh. B (Admissions 9(a)-(f)).

The fifth element, lack of authorization, is similarly established in the Mullaney Declaration and likewise undisputed by the Defendants.  The Mullaney Declaration verifies that the Defendants did not enter into a BMI license agreement, nor were the performances otherwise authorized. Moreover, Defendants continued to cause the public performance of copyrighted music without permission after being instructed to cease, as indicated by the Certified Infringement Report. Exh. E  (Mullaney Declaration, ¶ 9, 10 and Exh. A, thererto).

            B.        The Defendants Are Vicariously Liable for Acts of
                    Infringement Committed at Main Street Bar and Grill

Main Street Bar & Grill, Inc. is itself liable for infringing acts committed at the Main Street Bar & Grill establishment. See Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance) (citing Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975)). Similarly, as the President of Main Street Bar & Grill, Inc., Defendant Albers was the corporate officer directly controlling at Main Street Bar and Grill  - in particular the managers at the Establishment and the music use policy of the Establishmnet - - and is liable for the infringing acts committed at there.  See Sailor Music, 640 F. Supp. at 633 (a corporate officer is liable as a joint tortfeasor in a copyright infringement action where the officer was the dominant force in the corporation and determined the policies which resulted in the infringement); Broadcast Music, Inc. v. Meadowlake, Ltd., 754 F.3d 353, 355 (6th Cir. 2014) ( "Once a defendant meets the test for vicarious liability, the classification of his business does not (at least in general) exempt him from

liability.")  The Copyright Act, at 17 U.S.C. Section 501(a), provides that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by Sections 106 through 121 . . . is an infringer of the copyright . . ." Interpreting the equivalent section under the Copyright Act of 1909, the Second Circuit Court of Appeals stated: "Although the Act does not specifically delineate what kind or degree of participation in an infringement is actionable, it has long been held that one may be liable for copyright infringement even though he has not himself performed the protected composition."  Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F. 2d 1159, 1161-62 (2d Cir. 1971).

> In an earlier Second Circuit case, the Court stated:
>
> [T]he cases are legion which hold the dance hall proprietor liable for the infringement of copyright resulting from the performance of a musical composition by a band or orchestra whose activities provide the proprietor with a source of customers and enhanced income.  He is liable whether the band leader is considered, as a technical matter, an employee, or an independent contractor and whether or not the proprietor has knowledge of the compositions to be played or any control over their selection.

Shapiro, Bernstein & Co., Inc. v. H.L. Green Co., Inc., 316 F. 2d 304, 307 (2d Cir. 1963); Broadcast Music, Inc. v. The Peppermint Club, Inc., 229 U.S.P.Q. 534, 537-38 (N.D. Ohio 1986).

As the sponsor of the public performances, the corporate Defendant Main Street Bar & Grill, Inc. is liable for infringement at Main Street Bar and Grill. See  Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 961 (N.D. Ill. 1985)([n]ot only is the performer liable for infringement, but so is anyone who sponsors the performance)(citing Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 157 (1975)).  The corporate Defendant, Main Street Bar & Grill, Inc. is likewise responsible for the tortious actions of their employees under the doctrine of respondeat superior.   Wihtol v. Crow, 309 F.2d 777, 782-783 (8th Cir. 1962); M. Witmark & Sons v.

Calloway, 22 F.2d 412, 414 (D.Tenn. 1927).  See generally F. Harper, F. James & O. Gray, The Law of Torts, §26.3 (2d ed. 1986).  See also Nimmer on Copyright, §12.04[A].

Not only is Main Street Bar & Grill, Inc. liable for infringements occurring at Main Street Bar and Grill, but George D. Albers is individually liable.  "A corporate officer is jointly and severally liable, with his corporation for copyright infringement if he (1) 'had the right and ability to supervise the infringing activity', and (2) 'has a direct financial interest in such activities'." The Peppermint Club, Inc., 229 USPQ at 538 (citing Warner Bros., Inc. v. Lobster Pot, Inc., 582 F. Supp. 478, 483 (N.D. Ohio 1984)). See also Nick-O-Val Music Co. v. P.O.S. Radio, Inc., 656 F. Supp. 826, 828 (M.D. Fla. 1987); Milene Music, Inc. 551 F. Supp. at 1295; Boz Scaggs Music 491 F. Supp. at 913-14.

Defendant Albers, as President of Main Street Bar & Grill, Inc. had responsibility for the day to day activities there at all relevant times.  He held management meetings several times per month for five years, he applied for and obtained the liquor license, he made decisions about day-to-day management of the establishment, including the affirmative decision to direct the restaurant managers how to deal with music use at the establishment and to ignore BMI.  He also personally invested money in the Establishment for which he holds a note, and, according to his testimony,  he entered into the business to make money from it.  Exh. C  (Albers Dep. at 14:9-11).

## IV.     PLAINTIFFS ARE ENTITLED TO THE RELIEF THEY REQUEST

Plaintiffs request permanent injunctive relief, statutory damages for each of the claims of infringement, costs and reasonable attorney's fees.  Each aspect of the requested relief is briefly discussed below.

### A.     Injunctive Relief

Musical performances are obviously important to the operation of Main Street Bar and Grill;. "If music did not pay, it would be given up." Herbert v. The Shanley Co., 242 U.S. 591, 595, 37 S.Ct. 232, 233 (1917).  It is clear from the fact that a BMI investigator logged unauthorized performance of music in the BMI repertory - - long after Defendants' receipt of numerous calls and letters from BMI - - that Defendants did not give it up. Plaintiffs therefore seek injunctive relief to prevent further copyright violations.  See Bridgeport Music, Inc. v. Justin Combs Publ'g, 507 F.3d 470, 492 (6th Cir. 2007).

17 U.S.C. Section 502(a) provides that the Court may grant final injunctions "to prevent or restrain infringement of a copyright." As one court has stated in a case similar to this:

> A permanent injunction is especially appropriate where a threat of continuing infringement exists. . . The threat of continuing infringement is substantial in the present case.  Niro's provided unauthorized performances of copyrighted musical compositions on its premises after receiving oral and written notices of infringement and demands to stop such infringement from BMI.  This behavior indicates a willful disregard of copyrights held by BMI and should be permanently enjoined.

Broadcast Music, Inc. v. Niro's Palace, Inc., 619 F. Supp. 958, 963 (N.D. Ill. 1985).  Here, as in Niro's, the Defendants willfully disregarded the copyrights held by the Plaintiffs, as well as oral and written notice and continued to perform copyrighted musical compositions for years with no license to do so.

Even where Defendants have secured licenses after the time of the infringements, injunctive relief is warranted.  In Milene Music, the defendants were licensed by the time the court considered the plaintiffs' Motion for Summary Judgment.  The Court granted injunctive relief stating that "[t]he history of defendants' actions...exhibits an unfortunate tendency conveniently to ignore, from time to time . . . the plaintiffs' proprietary rights."  551 F. Supp. at 1295-1296.  See also Sailor Music,

640 F. Spp. at 634-35.

In this instance where the establishment is as yet unlicensed and Main Street Bar & Grill continued offering unauthorized performances of the Plaintiffs' music long after they were advised that they were violating the law, broad injunctive relief is appropriate and necessary.

### B.     Statutory Damages

The Copyright Act empowers a Plaintiff to elect to receive an award of statutory damages "in a sum of not less than $750 or more than $30,000" per infringement in lieu of an award representing the Plaintiffs' actual damages and the Defendant(s)' profits. 17 U.S.C. Section 504(c)(1). Furthermore, "[i]n a case where the copyright owner sustains the burden of proving...that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. Section 504(c)(2). Within these statutory limits, the assessment of damages is at the discretion of the court. See F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 231-32 (1952).

Statutory damages are "designed to discourage wrongful conduct...and vindicate the statutory policy." Id. at 233. "The court's award should be designed to compensate plaintiffs as well as to punish defendant[s]." Prater Music v. Williams, 5 USPQ2d 1813, 1816 (W.D. Mo. 1987). To further discourage continued abuse and give effect to the Copyright Act, the amount awarded in statutory damages should significantly exceed the amount of unpaid license fees. See EMI Mills Music, Inc. v. Empress Hotel, Inc., 470 F. Supp.2d 67, 75-76 (D. Puerto Rico 2006). As the court in Prater Music held: "If the copyright laws are to have any effect, a judgment against [a] defendant must be appreciably more than the amount he would have had to expend to obtain permission." 5 USPQ at 1816. Music users such as the Defendants should be "put on notice that it costs less to

obey the copyright laws than to violate them." Rodgers v. Eighty Four Lumber Co., 623 F. Supp. 889, 892 (W.D. Pa. 1985) (quoting Music City Music v. Alfa Foods Ltd., 616 F. Supp. 1001, 1003 (E.D. Va. 1985)). See also Broadcast Music, Inc. v. Triple L Vending, Inc., 5 USPQ2d 1346, 1349 (W.D. Tex. 1987); Halnat Pub. Co. v. L.A.P.A., Inc., 669 F. Supp. 933 (D. Minn. 1987).

As set forth in the Mullaney Declaration, when BMI first contacted the Defendants on May 13, 2010, Main Street Bar and Grill was asked to execute a license agreement. Despite the numerous calls and letters, BMI has never received a license agreement or any license fees from the Defendants.

The court, in its discretion, may also augment the amount of statutory damages awarded to reflect the degree of culpability exhibited by the Defendants. See Wow & Flutter Music v. Len's Tom Jones Tavern, Inc., 606 F. Supp. at 555-57. "Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful." Prater Music, 5 USPQ2d at 1815; accord International Korwin Corp. v. Kowalczyk, 855 F. 2d. 375 (7th Cir. 1988); Nick-O-Val Music Co., Inc., 656 F. Supp. at 829; Rodgers, 623 F. Supp. at 892.

The record supports a finding that the Defendants deliberately violated the Plaintiffs' rights. As set forth in the Mullaney Declaration, between May 2010 and February 2013, BMI sent letters to the Defendants and repeatedly advised them of the need to enter into a license agreement. Exh. E (Mullaney Declaration at ¶¶ 3, 5). A BMI representative telephoned Defendants fifty-one (51) times and spoke to Defendant Albers once. Id. at ¶ 8). A BMI representative also visited the establishment on one occasion. Id. On July 23, 2012, BMI sent Defendants an overnight letter informing them that they must immediately cease unauthorized performances of BMI-licensed music. Id. at ¶ 6. Despite all of this, a BMI researcher made a written record of the performance of

six (6) BMI-licensed compositions after that date. Id. at ¶ 10.

This is clearly a situation where the Plaintiffs should be awarded damages well in excess of the statutory minimum. Within the limits of $750 and $30,000 per infringement, the amount of any statutory damages award is within the discretion of this Court. 17 U.S.C. §504(c) (1999). For the six (6) acts of infringement described in the Complaint, Plaintiffs request a total award of $27,000.00. This figure is approximately three times the amount Plaintiffs would have received in licensing fees from Defendants had their establishment properly been licensed for from May 2010 to April 2015, Exh. E  (Mullaney Declaration at ¶ 16), and constitutes an award of $4,500.00 for each of the six (6) infringements. This request is well within the reasonable range of awards for similar infringing activity. See EMI April Music, Inc. v. White, 618 F. Supp. 2d 497 (E.D. Va. 2009) (awarding $3,500.00 per work infringed, for a total principal amount of $10,500.00); Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1229-30 (7th Cir. 1991); Broadcast Music, Inc. v. Buck Wild Saloon, LLC d/b/a Buck Wild Saloon, et al., 2011 U.S. Dist. LEXIS 154147(M.D. TN December 5, 2011) (awarding $8,000 for each of 5 copyright violations); Broadcast Music, Inc., et al. v. Cameron Hospitality, Inc.  2011 U.S. Dist. LEXIS 143262 No. 5:11-CV-152-BO (E.D.N.C. August 11, 2011) (awarding $7,612.50 for each of 4 copyright violations) Broadcast Music, Inc. v. Pub Dayton, LLC, et al., 2011 U.S. District LEXIS 57211 (S.D. Ohio May 27, 2011) (awarding $7,750 for each of 4 copyright violations); Broadcast Music Inc. v. V3 Club Company LLC d/b/a The Highlands, et al, cv-09-08039 (C.D. CA June 21, 2010) (awarding $9,000 for each of the 9 copyright violations) (opinion not available on Lexis, but cited and discussed in Broadcast Music, Inc. v. Imagination Indus., 2013 U.S.Dist. LEXIS 110197 n.1 (D. Neb. 2013)

Courts consistently have also held that a statutory damages award three times the amount

that the plaintiff would have received in licensing fees is appropriate under Section 504(c). <u>See Dream Dealers Music v. Parker</u>, 924 F. Supp. 1146, 1153 (S.D. Ga. 1994) (awarding three times what defendant would have paid ASCAP to be licensed). <u>Broadcast Music, Inc. v. Entertainment Complex, Inc.</u>, 198 F. Supp. 2d 1291 (N.D. Ala. 2002) (awarding $3,909.09 for each of 11 copyright violations) <u>See also</u> <u>Sailor Music v. IML Corp.</u>, 867 F. Supp. 565, 570 (E.D. Mich. 1994) (reviewing "a survey of statutory awards throughout the country, all of which indicate that the courts typically award three times the amount of a properly purchased license for each infringement"). Therefore, Plaintiffs request is a modest, just, and appropriate statutory damages award.

### C.    Attorney's Fees and Costs

The Copyright Act expressly provides that the "court may also award a reasonable attorney's fee to the prevailing party." 17 U.S.C. Section 505. Because it is consistent with the purpose of the Copyright Act, courts routinely award the reasonable fees incurred by a Plaintiff asserting its rights. <u>See</u> <u>Triple L Vending, Inc.</u>, 5 USPQ2d at 1349-52; <u>Broadcast Music, Inc. v. Fox Amusement Co.</u>, 551 F. Supp. 104 (N.D. Ill. 1982); <u>Milene Music, Inc. v. Gotauco</u>, 551 F. Supp. at 1297.

In the present case, the Defendants have intentionally ignored their obligation under the Copyright Act and have forced Plaintiffs to engage in litigation to enforce their rights. Accordingly, Plaintiffs should be awarded full attorney's fees.

The Copyright Act expressly provides that the court "in its discretion may allow the recovery of full costs by or against any party ..." 17 U.S.C. Section 505. Under this provision, the courts have allowed full recovery by the prevailing party of its reasonable costs. <u>See Milene Music, Inc. v. Gotauco</u>, 551 F. Supp. at 1297. There are no factors which would militate against an award

of the Plaintiffs' costs in the present case. Such an award is particularly appropriate in light of the Defendants' deliberate misconduct and the statutory purpose of encouraging private enforcement of the Copyright Act. If the Court rules in Plaintiffs' favor on this moiton for summary judgment, Plaintiffs will submit their petition for attorney fees and costs in accordance with Fed. R. Civ. P. 54.

## V.  CONCLUSION

For all of the foregoing reasons, Plaintiffs request that the Court:

(1) Enter a Summary Judgment in its favor against each Defendant, jointly and severally;

(2) Enter an order permanently enjoining Defendants from further acts of infringement;

(3) Award Plaintiffs statutory damages of Twenty Seven Thousand Dollars ($27,000) which is Four Thousand Five Hundred Dollars ($4,500) for each of the six (6) acts of copyright infringement alleged in the Complaint;

(4) Award Plaintiffs their full costs;

(5) Award Plaintiffs their reasonable attorney's fees; and

(6) Grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

/Bernie W. Ellis
Bernie W. Ellis
Fed. I.D. No. 5650
McNair Law Firm, P.A.
P.O. Box 447
Greenville, South Carolina 29602
Attorney for Plaintiffs
bellis@mcnair.net

Greenville, South Carolina
July 16, 2015
GREENVILLE 331319v3